847 A.2d 1 (2004)
368 N.J. Super. 443
Donna HENNESSEY, Plaintiff-Appellant,
v.
WINSLOW TOWNSHIP; Ronald Nunnenkamp; Anthony Bello; Sue Ann Metzner; Geraldine Gaffney; Brian Valerio; Barry Wright; Tess Pino, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 17, 2004.
Decided April 16, 2004.
*2 John D. Borbi, argued the cause for appellant (Bafundo, Porter, Borbi & Clancy, attorneys; Mr. Borbi, on the brief).
A. Michael Barker, Linwood, argued the cause for respondents (Barker, Douglass & Scott, attorneys; Mr. Barker, on the brief).
Before Judges CUFF, AXELRAD and WINKELSTEIN.[1]
The opinion of the court was delivered by WINKELSTEIN, J.A.D.
Plaintiff, Donna Hennessey, appeals from the Law Division's May 9, 2003 summary judgment dismissing her complaint. Plaintiff claimed defendant Winslow Township and its employees violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42(LAD), when they terminated her employment. She alleged she was discriminated against based upon her disability and her age, and was retaliated against, in violation of N.J.S.A. 34:15-39.1, for making a claim for workers' compensation benefits. Plaintiff has limited her argument on appeal to her disability discrimination claim.
The motion judge dismissed plaintiff's claim under principles of collateral estoppel. Because plaintiff had been provided *3 with a hearing by the Township before she was terminated, in which the hearing officer determined that the Township and its employees did not fail to reasonably accommodate plaintiff's disability, the motion judge reasoned that plaintiff was collaterally estopped from relitigating that issue in her LAD claim. We disagree and reverse. We hold that issues decided at a hearing before the appointing authority have no preclusive effect upon the issues in a subsequent Superior Court LAD claim. Just as plaintiff would have been entitled to a decision based solely on the record before an Administrative Law Judge (ALJ) had she appealed to the Merit System Board the Township's decision to terminate her employment, plaintiff is similarly entitled to a decision on her LAD claim based solely on the record established in the Superior Court action.
The material facts are not in dispute. In July 1992, the Township hired plaintiff as a clerk/typist in the police records department. She continued in that position until July 28, 1998, when she went on disability leave after suffering a fall at work the previous day, injuring her left shoulder, neck, and back. As a result of her injuries, she ultimately underwent a cervical fusion by Dr. Lawrence Deutsch on April 2, 1999.
Under the terms of the contract between the Township and plaintiff's union, and pursuant to the controlling Township ordinance, plaintiff was permitted up to one year of disability leave. With her leave expiration date approaching, on June 30, 1999, defendant Brian Valerio, a captain in the Township police department, wrote a letter to plaintiff. He said her leave of absence would expire on July 28, 1999, and if she were unable to return to work by that date, she would "then receive the appropriate New Jersey Department of Personnel forms indicating intent to terminate you from employment with the Township...." In response to that letter, on July 20, 1999, eight days before her disability leave was to expire, plaintiff wrote the following letter to Captain Valerio:
Enclosed is the note from Lawrence S. Deutsch, M.D., releasing me to light duty with limited restrictions. I feel that these restrictions would not interfere with the primary functions of my duties as a Police Records Clerk.
Plaintiff sent a copy of her letter to defendant Ronald Nunnenkamp, the Township Administrator, and a copy to her union. The July 8, 1999 note from Dr. Deutsch, accompanying plaintiff's letter to Captain Valerio, said: "Work: no lifting greater than 5 lbs[,] no prolonged sitting or standing."
Dr. Deutsch apparently wrote that note after examining plaintiff. The results of that examination, which the doctor forwarded to both plaintiff and the workers' compensation managed care provider, were as follows:
DONNA HENNESSEY
July 8, 1999
Donna returns today. Her surgery is now 12 weeks ago. We have done flexion-extension with her and she has some tightness in the neck but no symptoms in the arms. She does state that when she does some typing she will tend to get numbness in her arms and tingling but no pain.
Her flexion-extension films look good without evidence of motion, although she did not go into full flexion of the neck.
At this point in time, we have told her that she can wean out of the collar a bit, take it off for watching T.V., sleeping and eating. We will see her back in three weeks with a repeat x-ray. If that looks good, we will send her to physical therapy *4 and have her start working with them.
In regards to her back, she still has significant problems there. Sitting for any length of time is still very painful. We will review her back problem when she returns next time. She said that she could, however, go back to work but only in a very limited capacity with no lifting greater than five pounds, no prolonged sitting or standing.
Acknowledging plaintiff's July 20 letter and Dr. Deutsch's note, Nunnenkamp advised plaintiff that the Township's "willingness to accept you back to work is simply a question of your current medical condition and your related abilities to reasonably perform the job." Consequently, to assist the Township's evaluation of plaintiff's ability to return to work, Nunnenkamp sent a job analysis form to Dr. Deutsch for his completion.
On the form, the doctor gave his opinion concerning how frequently plaintiff was permitted to perform specific tasks on a daily basis, including lifting, carrying, turning and reaching. He also enclosed a note indicating that: "It is my opinion that Donna Hennessey may return to work with restrictions indicated on the job analysis form." The pertinent provisions of that form read as follows:

Upon receipt of the completed form, Nunnenkamp contacted defendant Joanne DeBraccio, the rehabilitation nurse managing plaintiff's case. After reviewing the form, DeBraccio told him that plaintiff was not capable of returning to full-time duty.
Consequently, Captain Valerio advised plaintiff that based upon Dr. Deutsch's evaluation of her condition, "which implies certain restrictions, it is the opinion of [the medical provider] and the Township that you are not certified to return to work."
*5 On August 3, 1999, the Township sent plaintiff a preliminary notice of disciplinary action. She was charged with an "Inability to Perform Duties" pursuant to N.J.A.C. 4A:2-2.3a(3), and with "Other Sufficient CauseMedically Unfit," pursuant to N.J.A.C. 4A:2-2.3a(11). After receiving the notice, plaintiff requested a departmental hearing. See N.J.S.A. 11A:2-13 (permanent civil service employee shall be notified in writing and have opportunity for hearing before disciplinary action is taken).
The Township appointed a Municipal Court judge, who sat part-time in the Township, as the hearing officer. The hearing took place in the Township municipal courtroom, where plaintiff was represented by an experienced labor law attorney supplied by her union. Plaintiff, her husband, Captain Valerio, defendant Lieutenant Barry Wright of the Township police department, and defendants Geraldine Gaffney and Tess Pino, two other Township employees, testified. No prehearing discovery took place, nor was the hearing taped or otherwise transcribed.
Plaintiff described the hearing as casual and informal. Both her attorney and the Township attorney were permitted to call and question witnesses. Plaintiff did not recall being questioned about her medical condition during the hearing and neither the Township nor plaintiff called any medical experts to testify. However, the hearing officer was presented with the job analysis form completed by Dr. Deutsch, as well as other medical documentation concerning plaintiff's condition.
During the hearing, the hearing officer, accompanied by plaintiff and her attorney, inspected the police records room where plaintiff worked, to examine, among other things, the filing cabinets plaintiff would be required to move during the course of her employment.
Following the hearing, both parties' attorneys submitted written arguments. In her post-hearing submission, plaintiff's counsel argued that "a realistic assessment of the duties of Police Records Clerk demonstrates that Ms. Hennessey could perform all of the essential duties of the position within the frequencies designated by Dr. Deutsch...." In support of plaintiff's position, her counsel cited to Ensslin v. Township of No. Bergen, 275 N.J.Super. 352, 362, 646 A.2d 452, 457 (App.Div. 1994), certif. denied, 142 N.J. 446, 663 A.2d 1354 (1995), for the proposition that the Township had an obligation to reasonably accommodate plaintiff's limitations. In making the argument, counsel referred to N.J.A.C. 13:13-2.5(b), which lists the factors to be considered to determine whether an accommodation would impose an undue hardship on the operation of an employer's business. Counsel made the point that while the Township "clearly desires to employ only employees who can perform job duties without medical restriction, this standard no longer comports with the law."
On June 12, 2000, the hearing officer rendered his decision, finding that plaintiff was unable to return to her position "due to the restrictions placed on her by her physician." He concluded that the files he inspected were "obviously heavy and require pushing and pulling in excess of the limits allowed by [plaintiff's] physicians." He also found that there was "no light duty position in the police department for a clerical position[,]" noting that the Township presented "credible evidence that due to the size of the department it could not accommodate an employee with light duty status." The hearing officer concluded that the "[T]ownship may terminate [plaintiff] from the position of police department clerk" because "the [T]ownship [was] not *6 able to accommodate [plaintiff] by creating a light duty position."
Plaintiff was served with a final notice of disciplinary action dated June 1, 2000, terminating her employment effective July 29, 1999. The record is unclear whether this notice was prepared before or after the hearing officer rendered his decision on June 12, 2000, and when it was mailed to plaintiff. Plaintiff had the right, within twenty days of her receipt of the final notice of disciplinary action, to appeal to the Merit System Board, but she did not exercise that right. See N.J.S.A. 11A:2-14; N.J.S.A. 11A:2-15 (employee has right to appeal disciplinary action to Merit System Board).
On January 8, 2001, almost seven months after the hearing officer's decision, plaintiff filed a charge of discrimination against the Township with the Equal Employment Opportunity Commission (EEOC). On May 4, 2001, the EEOC determined that the Township had violated the Americans With Disabilities Act (ADA), 42 U.S.C.A. §§ 12101 to 12213, by failing to attempt to accommodate plaintiff's disability. Plaintiff's complaint in the Superior Court followed.
Under the LAD, an employer must reasonably accommodate an employee's disability, Tynan v. Vicinage 13 of the Super. Ct. of N.J., 351 N.J.Super. 385, 396, 798 A.2d 648, 654 (App.Div.2002), and the related limitations of an employee, "unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." Id. at 397, 798 A.2d at 655 (citing N.J.A.C. 13:13-2.5(b)). Although an employer must consider reasonably accommodating an employee with a disability, that duty "extends only so far as necessary to allow `a disabled employee to perform the essential functions of his job.'" Ibid. (quoting Vande Zande v. State of Wis. Dept. of Admin., 851 F.Supp. 353, 362 (W.D.Wis. 1994), aff'd, 44 F.3d 538 (7th Cir.1995)). An employer need not attempt accommodation if it "reasonably determines that an employee because of handicap cannot presently perform the job even with an accommodation...." Ibid.; Ensslin, supra, 275 N.J.Super. at 363, 646 A.2d at 457 (rejecting job applicant because of handicap that precludes adequate job performance not violation of LAD).
In this case, the hearing officer found that due to the restrictions placed upon plaintiff by her physician, plaintiff was unable to fulfill the job requirements of her position as a police department records clerk. In other words, he found that plaintiff was unable to perform the essential functions of her job. The hearing officer also found that the Township was not able to accommodate an employee in plaintiff's position with light duty status.
Under certain circumstances, agency determinations may be given collateral estoppel effect in subsequent judicial proceedings. See Ensslin, supra, 275 N.J.Super. at 373, 646 A.2d at 462. The doctrine of collateral estoppel is designed to afford "efficient justice by avoiding the relitigation of matters that have been fully and fairly litigated and fully and fairly disposed of." Kortenhaus v. Eli Lilly & Co., 228 N.J.Super. 162, 166, 549 A.2d 437, 439 (App.Div.1988). An equitable doctrine, collateral estoppel is not applied if it is unfair to do so. Kozlowski v. Smith, 193 N.J.Super. 672, 675, 475 A.2d 663, 665 (App.Div.1984). "Efficiency is subordinated to fairness and, consequently, if the court is satisfied that efficiency would lead to an unjust result, its application should not be tolerated." Barker v. Brinegar, 346 N.J.Super. 558, 566, 788 A.2d 834, 839 (App.Div.2002).
*7 The doctrine may be applicable if the party asserting it demonstrates:
(1) the issue to be precluded is identical to the issue decided in the first proceeding; (2) the issue was actually litigated in the prior action, that is, there was a full and fair opportunity to litigate the issue in the prior proceeding; (3) a final judgment on the merits was issued in the prior proceeding; (4) determination of the issue was essential to the prior judgment; and (5) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior proceeding. Even where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so.
[Pace v. Kuchinsky, 347 N.J.Super. 202, 215, 789 A.2d 162, 171 (App.Div. 2002) (citations omitted)].
Plaintiff claims the following exception is applicable to her case: "A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them...." Ensslin, supra, 275 N.J.Super. at 370, 646 A.2d at 461 (citing Restatement (Second) of Judgments, § 28(3)(1982)). She argues that this exception applies because she did not have her own attorney, there was no prehearing discovery, no medical evidence was presented, and no written record was made. While acknowledging this exception, defendants urge that we find no material difference between the quality or extensiveness of the departmental hearing and the process available to plaintiff in the Superior Court action. Defendants claim plaintiff was afforded all of her due process rights at the hearingshe was represented by counsel, able to call, examine, and cross-examine witnesses, and submitted a written legal brief to support her position.
We take a somewhat different view. It is not the content of what occurred, or could have occurred, at the departmental hearing that is dispositive; rather, it is the nature of the hearing itself that prevents it from having any preclusive effect on subsequent proceedings.
Plaintiff's entitlement to a hearing before disciplinary action may be taken against her arises out of N.J.S.A. 11A:2-13. This statute says that: "Before any disciplinary action ... is taken against a permanent [civil service] employee ... the employee shall be notified in writing and shall have the opportunity for a hearing before the appointing authority or its representative...." After the hearing has been completed, the appointing authority has twenty days to make a final disposition of the charges against the employee. N.J.S.A. 11A:2-14. An employee who disagrees with the appointing authority's final disposition has the right to appeal that decision to the Merit System Board. N.J.S.A. 11A:2-15. Should that appeal be taken, and a contested case determination be made, the case is transferred to an ALJ who conducts hearings and issues a report and decision with recommended findings of fact and conclusions of law. N.J.S.A. 52:14B-10(b) & (c). The ALJ's report would then be reviewed by the agency head, who may adopt, reject, or modify the decision within forty-five days, based "only on the record established at the hearing" before the ALJ. See N.J.S.A. 52:14B-10(c) & (d). Simply put, once an appeal has been taken from the appointing authority's final disposition, the hearing before the agency is de novo "at which all relevant testimony may be introduced." In re Darcy, 114 N.J.Super. 454, 459, 277 A.2d 226, 229 (App.Div.1971); see also Grasso v. Borough Council of Borough of Glassboro, *8 205 N.J.Super. 18, 25-26, 500 A.2d 10, 14-15 (App.Div.1985) (hearing concerning discharge of public employee is de novo), certif. denied, 103 N.J. 453, 511 A.2d 639 (1986).
Under this process, the hearing officer's findings and conclusions are not considered by either the ALJ or the Merit System Board. The findings of the appointing authority or its representative at the initial hearing have no bearing upon the Merit System Board's ultimate decision. The final agency decision is made only upon the record established before the ALJ. In other words, once an appeal is taken to the Merit System Board, an employee has the right to start over, and present evidence and raise whatever relevant issues the employee deems appropriate to support his or her position, regardless of what took place at the hearing before the appointing authority.
Here, plaintiff did not choose to appeal the Township's decision to terminate her employment to the Merit System Board. Instead, she sought relief in the Superior Court under the provisions of the LAD. By accepting defendant's argument that the issues addressed by the hearing officer at the initial hearing may not be relitigated in the Superior Court, we would deny plaintiff the same right in her LAD actionto fully present her claim regardless of the issues addressed at the departmental hearingthat she would have had if she had pursued an appeal of her termination through the administrative process. Such a result would be illogical and unfair.
Our public policy gives a high priority to ensure "complete review and rigorous enforcement in matters of alleged and actual discrimination." Hahn v. Arbet Sys. Ltd., Inc., 200 N.J.Super. 266, 268, 491 A.2d 58, 59 (App.Div.1985). Collaterally estopping plaintiff from presenting her LAD claim would be counter-productive to achieving this goal.
The LAD "shall be construed fairly and justly with due regard to the interests of all parties." N.J.S.A. 10:5-27. That fairness will be achieved by permitting plaintiff to pursue her LAD claim. The departmental hearing lasted but two hours. The appointing authority called no expert witnesses. Although the doctrine of collateral estoppel is designed to afford efficiency in the justice system by avoiding litigating an issue twice, see Kortenhaus, supra, 228 N.J.Super. at 166, 549 A.2d at 439, under the circumstances presented here, the loss of efficiency arising out of relitigating the same issues pales against the unfairness that would result to plaintiff if she is not permitted to pursue her LAD claim. See Barker, supra, 346 N.J.Super. at 566, 788 A.2d at 839 (efficiency subordinated to fairness when efficiency leads to unjust result).
Defendant's reliance upon Ensslin is unavailing. In Ensslin, supra, the issues the plaintiff was precluded from asserting in his Superior Court action had already been addressed in thirteen days of hearings before an ALJ. 275 N.J.Super. at 358, 646 A.2d at 455. Any findings made at the appointing authority level before the matter was tried before the ALJ were not a consideration. Ensslin, therefore, does not support defendant's argument.
Accordingly, we reverse the order entering summary judgment dismissing plaintiff's complaint and remand for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] Judge Axelrad was not present for oral argument but has reviewed the tape recording of the session.