875 A.2d 240

DONNA HENNESSEY, PLAINTIFF–RESPONDENT, v. WINSLOW TOWNSHIP; RONALD NUNNENKAMP; ANTHONY BELLO; SUE ANN METZNER; GERALDINE GAFFNEY; BRIAN VALERIO; BARRY WRIGHT AND TESS PINO, DEFENDANTS–APPELLANTS, AND JOHN DOE(S) A–Z (FICTITIOUS NAMES OF DEFENDANTS AS AIDERS, ABETTERS, CONSPIRATORS, WHO PARTICIPATED IN AND/OR FACILITATED THE TERMINATION OF PLAINTIFF)INDIVIDUALLY, JOINTLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.

Argued January 4, 2005—Decided June 28, 2005.

594

*Joseph M. Scott* argued the cause for appellants (*Barker, Douglass & Scott*, attorneys; *A. Michael Barker*, of counsel).

*John D. Borbi* argued the cause for respondent (*Bafundo, Porter, Borbi & Clancy*, attorneys).

Justice LaVECCHIA delivered the opinion of the Court.

Plaintiff, a municipal civil servant, filed an action in the Superior Court under the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5-1 to -42, against her former employer. She claimed that she had been discriminated against on the basis of disability because she was discharged for not returning to work when her disability leave expired and she was not offered the accommodation of a light duty assignment to which she could return. The trial court dismissed plaintiff's LAD complaint on the basis that the same claim was raised and rejected in a departmental termination hearing.

At the departmental hearing, the contest focused on plaintiff's assertion that her employer had an obligation to accommodate her disability by allowing her to return to a light duty assignment. The hearing officer sided with the employer and final disciplinary

charges issued terminating plaintiff's employment. She did not pursue her right to *de novo* review by the Merit System Board (MSB), which would have included an opportunity for a hearing before the Office of Administrative Law (OAL). Instead, she filed her LAD complaint in Superior Court.

The Appellate Division disagreed that collateral estoppel was appropriate in these circumstances and reversed the trial court's judgment. *Hennessey v. Winslow Tp.*, 368 *N.J.Super.* 443, 446, 847 *A.*2d 1 (2004). Following the Appellate Division's reinstatement of plaintiff's complaint, we granted the employer's petition for certification, 180 *N.J.* 455, 852 *A.*2d 191 (2004), and now affirm.

## I.

Plaintiff Donna Hennessey was employed as a clerk/typist in the records department of the Winslow Township (Township) police department when she was injured at work. She slipped and fell on a wet floor on July 27, 1998, injuring the left side of her back, left shoulder, and her neck area, and requiring treatment for a cervical/lumbar strain. After returning briefly to work, she was placed on disability leave status beginning July 28, 1998, and was continued on leave until the date of her termination from employment one year later.[1]

Pursuant to Township ordinance and the collective negotiations agreement applicable for Hennessey's position, she was entitled to one year of disability leave. A month prior to the expiration of her disability leave entitlement, Hennessey's supervisor, Captain Valerio, notified her that her leave would expire on July 28, 1999, and that if she was unable to return to work by that date, then her employment would be terminated. Hennessey notified Valerio that she intended to return to work and that she had medical clearance to resume working as of July 8, 1999, subject to limited duty restrictions. She included a report from her treating physi-

---

[1] During that period, plaintiff underwent a cervical fusion that was performed on April 2, 1999.

cian indicating that she could not lift more than five pounds nor could she sit for prolonged periods.

The Township administrator sent a job analysis form to her physician for completion. One column of the form (completed by Hennessey's supervisor) indicated the frequency that certain tasks needed to be performed for the position of "Police Records Clerk Typist." The other column required her physician to indicate the frequency with which Hennessey would be able to perform each job-related activity. Hennessey's doctor identified several functions as being beyond her abilities and returned the form with a note indicating that Hennessey could return to work, but that she would be limited by the specific restrictions that he noted. The Township then notified Hennessey that it regarded her as unable to return to work.

A Preliminary Notice of Disciplinary Action dated July 29, 1999, stated that Hennessey was to be terminated for not returning to her duties at the conclusion of her authorized leave of absence, citing *N.J.A.C.* 4A:2–2.3(a) (inability to perform duties); *N.J.A.C.* 4A:2–2.3(a)11 (other sufficient cause—medically unfit); and Township Ordinance 52–14(b) (leave of absence greater than 12 months). As was her right, Hennessey requested a departmental hearing on the charges. *See N.J.S.A.* 11A:2–13.

For reasons not pertinent to this appeal, the hearing was not held until February 25, 2000. It was conducted by the Township's part-time hearing officer, who also served as a municipal court judge. Although there is no transcript of the proceeding, by all accounts the hearing was informal and lasted several hours. Hennessey and her husband were in attendance, as was Captain Valerio and three other witnesses for the Township. Both Hennessey and the Township had counsel. The parties' attorneys were allowed to call and question witnesses; however, there had been no pre-hearing discovery. Neither party presented any medical experts, nor does plaintiff recall being questioned about her medical condition. Several documents, including the job analysis form and other medical documents, were presented to the

hearing officer, however. The hearing officer, Hennessey, and Hennessey's attorney also went to the Police Records Room, to perform a physical inspection of the files and the filing cabinets with which a police records clerk/typist must work. Thereafter, both attorneys submitted post-hearing letter briefs.

The hearing officer found that Hennessey could return to work only on light duty status, with limitations on the amount that she could push/pull, lift/carry, twist/turn, and bend. He also found that the Township had presented credible evidence that Hennessey's position required her to push and pull heavy files, to sit in one position and twist and turn, and to lift items. Further, the hearing officer credited the Township's evidence that there was no light duty position to which Hennessey could be assigned. Commenting on his physical inspection of the Police Records Room, the hearing officer noted that the files were heavy and required more physical effort than Hennessey was medically cleared to perform and, further, that the small size of the department prevented the creation of a light duty position. Accordingly, the hearing officer concluded that Hennessey could be terminated because she was unable to return to duty.

A Final Notice of Disciplinary Action was issued, discharging Hennessey from employment effective July 29, 1999. Although she had the right to appeal her termination to the MSB, see N.J.S.A. 11A:2–14 and –15, she did not exercise that right. Instead, several months later, she filed a sex and disability discrimination claim against the Township with the Equal Employment Opportunity Commission (EEOC).[2] Upon investigation, the EEOC determined that Hennessey had demonstrated that she could meet most of the physical requirements of her position, except that she could not push and pull more than forty pounds or remain seated for extended periods of time, and that the Township

---

[2] Pursuant to a work sharing agreement between the EEOC and the Division on Civil Rights (DCR), the DCR served the Township Police Department with the discrimination charges and addendum, and notified the Township that the EEOC would be conducting the investigation on behalf of the two agencies.

had failed to attempt to identify an appropriate accommodation for her. Thus, the EEOC found that the Township had violated the Americans with Disabilities Act (ADA), 42 *U.S.C.A.* §§ 12101 to 12213, for failing to attempt an accommodation and for discharging Hennessey as medically unfit.[3]

Hennessey filed a complaint in the Superior Court alleging that the Township had violated the LAD in terminating her employment. For purposes of this appeal, the signal event in the proceeding occurred when defendants filed a motion for summary judgment, arguing that collateral estoppel barred Hennessey from pursuing her claim. The trial court granted the motion. Although it noted the informality of the departmental hearing that was conducted on Hennessey's disciplinary charges, the court concluded in favor of claim preclusion because it found that Hennessey, in fact, did receive a hearing on her claim of discrimination.

As noted earlier, the Appellate Division reversed the trial court's judgment. *Hennessey v. Winslow Tp.*, 368 *N.J.Super.* 443, 446, 847 *A.*2d 1 (2004). Writing for the panel, Judge Winkelstein observed that had Hennessey pursued her civil service appeal rights she would have been entitled to a *de novo* hearing and decision initially by an independent Administrative Law Judge (ALJ) and thereafter by the MSB. *Id.* at 454–55, 847 *A.*2d 1. Hennessey chose instead to litigate her LAD claim in Superior Court. *Id.* at 455, 847 *A.*2d 1. The panel found it to be incongruous to countenance a result that permits relitigation of plaintiff's LAD claim on a record created before the ALJ and the MSB, but that does not permit relitigation of the same claim before the Superior Court. *Ibid.* The Appellate Division determined, therefore, that Hennessey was not collaterally estopped from litigating her discrimination claim in Superior Court. *Ibid.*

---

[3] Hennessey's claim of sex discrimination was determined to be unfounded.

## II.

■ The doctrine of collateral estoppel operates to foreclose relitigation of an issue when

the party asserting the bar ... show[s] that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding, *see Pittman v. LaFontaine,* 756 *F.Supp.* 834, 841 (D.N.J.1991) (stating that for issue to be precluded subsequent action must involve substantially similar or identical issues); (2) the issue was actually litigated in the prior proceeding, *see ibid.* (stating that the "the litigant against whom issue preclusion is invoked must have had a full and fair opportunity to litigate the issue in the previous tribunal"); (3) the court in the prior proceeding issued a final judgment on the merits, *see State v. Redinger,* 64 *N.J.* 41, 45, 312 *A.*2d 129 (1973) (stating that collateral estoppel applies when "issue of ultimate fact has [ ] been determined by a valid and final judgment * * *"); (4) the determination of the issue was essential to the prior judgment, *see Warren Township v. Suffness,* 225 *N.J.Super.* 399, 408, 542 *A.*2d 931 (App.Div.) (stating that "[c]ollateral estoppel applies * * * to those [matters and facts] necessary to support the judgment rendered in the prior action"), *certif. denied,* 113 *N.J.* 640, 552 *A.*2d 166 (1988); and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. *See Wunschel v. City of Jersey City,* 96 *N.J.* 651, 658, 477 *A.*2d 329 (1984) (stating, "Central to the application of the doctrine [of collateral estoppel] is that the party against whom the doctrine is to be invoked must have been party to or privy to the prior proceedings.").

[*In Re Estate of Dawson,* 136 *N.J.* 1, 20–21, 641 *A.*2d 1026 (1994).]

It is generally recognized that the judicial principles underlying collateral estoppel and other doctrines of issue preclusion, such as *res judicata,* serve important policy goals that have currency in both administrative law and judicial settings. *See Hackensack v. Winner,* 82 *N.J.* 1, 31–33, 410 *A.*2d 1146 (1980) (holding that judicial determinations by administrative agencies are entitled to preclusive effect); *Ensslin v. Tp. of N. Bergen,* 275 *N.J.Super.* 352, 369, 646 *A.*2d 452 (App.Div.1994) (noting that preclusion applies if agency decision was "rendered in proceedings which merit such deference"), *certif. denied,* 142 *N.J.* 446, 663 *A.*2d 1354 (1995). Our decisions have enumerated the benefits flowing from such doctrines, such as "finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness". *Hackensack v. Winner, supra,* 82 *N.J.* at 32–33, 410 *A.*2d 1146 (1980) (stating that such principles "have an important place in the administrative field.").

Thus, as administrative law procedures have matured in this State, courts have recognized that administrative tribunals can and do provide a full and fair opportunity for litigation of an issue for various purposes.

Indeed, in *Williams v. Red Bank Board of Education*, 662 *F*.2d 1008, 1017 (3d Cir.1981), *overruled on other grounds as recognized in Schall v. Joyce*, 885 *F*.2d 101 (3d Cir.1989), the United States Court of Appeals for the Third Circuit recognized the fairness of administrative law proceedings in New Jersey when it first held that abstention principles could apply to constitutionally adequate state administrative law proceedings. Since then the United States Supreme Court has extended abstention's reach to state administrative law proceedings when the State interest involved is sufficiently strong. *See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 *U.S.* 619, 627 n. 2, 628, 106 *S.Ct.* 2718, 2723, 91 *L.Ed.*2d 512, 521–23 (1986) (holding similarly that federal court should abstain from interfering with pending state administrative proceeding in which important state interests are vindicated, so long as in those proceedings plaintiff would have full and fair opportunity to litigate her constitutional claim).[4]

Moreover, through careful application of collateral estoppel and other issue preclusion principles, duplicative and potentially inconsistent agency decisions have been avoided when administrative tribunals have overlapping jurisdiction over like claims. *See Hinfey v. Matawan Reg'l Bd. of Educ.*, 77 *N.J.* 514, 531–32, 391 *A.*2d

---

[4] With the exception of the Eleventh Circuit Court of Appeals, every federal circuit court of appeals now applies abstention principles in deference to a full and fair administrative adjudicatory proceeding. *See, e.g., JMM Corp. v. D.C.*, 378 *F*.3d 1117 (D.C.Cir.2004); *Maymó–Meléndez v. Álvarez–Ramírez*, 364 *F*.3d 27 (1st Cir.), *cert. denied,* —— U.S. ——, 125 *S.Ct.* 110, 160 *L.Ed.*2d 120 (2004); *Baffert v. Cal. Horse Racing Bd.*, 332 *F*.3d 613 (9th Cir.2003) (same); *Amanatullah v. Colo. Bd. of Med. Examiners*, 187 *F*.3d 1160 (10th Cir.1999); *Majors v. Engelbrecht*, 149 *F*.3d 709 (7th Cir.1998); *Doe v. Conn.*, 75 *F*.3d 81 (2d. Cir.1996); *Sun Ref. & Mktg. Co. v. Brennan*, 921 *F*.2d 635 (6th Cir.1990); *Alleghany Corp. v. McCartney*, 896 *F*.2d 1138 (8th Cir.1990); *Allen v. La. Bd. of Dentistry*, 835 *F*.2d 100 (5th Cir.1988); *Browning–Ferris, Inc. v. Balt. County*, 774 *F*.2d 77 (4th Cir.1985).

899 (1978) (applying "administrative comity" to resolve jurisdictional conflict as between agencies having concurrent, discretionary authority). Such dual jurisdiction can arise in a variety of settings, for example as between the MSB and the DCR, *see Hackensack v. Winner, supra,* and between the Department of Education (DOE) and the DCR, *see Hinfey, supra,* and *Balsley v. North Hunterdon Board of Education,* 117 *N.J.* 434, 444–45, 568 *A.*2d 895 (1990) (recognizing that agency that deferred to another state agency's jurisdiction under predominant interest analysis retains jurisdiction to award relief not otherwise available from predominant interest agency). Agency conflicts are minimized by adherence to this Court's instructions on administrative comity, when appropriate, as well as by such developments as the establishment of the OAL.[5]

That said, plaintiff here has filed a LAD complaint in Superior Court and the LAD specifically provides for an election of remedies. *N.J.S.A.* 10:5–13 prevents an unsuccessful plaintiff before the DCR from thereafter relitigating his or her claim in Superior Court. *See, e.g., Hernandez v. Region Nine Hous. Corp.,* 146 *N.J.* 645, 684 *A.*2d 1385 (1996) (commenting on LAD's statutory election of administrative versus judicial remedies when evaluating whether adverse EEOC determination should bar later LAD action in Superior Court). This matter does not present a neat election of remedies question, however, as between a DCR adjudication (or even a similarly conclusive adjudication by a sister agency with overlapping jurisdiction), and a later LAD action in Superior Court. Rather, against the backdrop of the statutory

---

[5] The OAL has helped to ease the tensions that can arise when agencies with overlapping jurisdiction require the commonality of a singular record and coordination in their mutual findings with respect thereto. *See N.J.A.C.* 1:1–17.1 to –17.8 (providing rules of hearing procedure for multiple agency jurisdiction claims, including standards for determining predominant interest as among multiple agencies). *See also Balsley, supra,* 117 *N.J.* at 445, 568 *A.*2d 895 (noting that failure to file before both DCR and DOE should not deprive administrative litigant of complete relief available through overlapping agency jurisdiction in respect of discrimination claim).

promise to a plaintiff of the right to an election of remedies, estoppel is being asserted by defendants because Hennessey raised a LAD claim in defense to her civil service disciplinary charges. More specifically, the defense was raised only in a departmental hearing on the disciplinary charges heard by the employer's hearing officer. We thus address the Township's issue preclusion argument in the precise context in which the issue has arisen.

### III.

■ Initially, it must be acknowledged that thorny questions have arisen in previous cases in respect of whether preclusion of a LAD complaint is appropriate when the same LAD claim allegedly was raised in an administrative litigation before an administrative agency having concurrent jurisdiction with the DCR, like the MSB here. *Compare Hahn v. Arbat Sys. Ltd.,* 200 *N.J.Super.* 266, 491 *A.*2d 58 (App.Div.1985) (analyzing whether preclusion appropriate following private arbitration of discrimination claim and finding private forum to be wanting for purposes of collateral estoppel) *with Ensslin, supra,* 275 *N.J.Super.* at 358, 646 *A.*2d 452 (finding preclusion appropriate after discrimination claim had been subjected to plenary hearing before ALJ, whose findings were adopted by MSB). *See also Bunalski v. Tp. of Irvington,* 180 *N.J.* 161, 163, 849 *A.*2d 1070 (2004) (declining to address issue preclusion on appeal when, in respect of LAD claim allegedly implicit in pension board's adjudication, defendant had not pursued issue preclusion defense before trial court). To decide this matter, we need not plumb the depths of issue preclusion questions that might arise in the various administrative law settings in which a LAD claim may be raised. We reach only the question whether preclusion principles should apply to plaintiff's LAD claim when she abandoned her right to take an appeal to the MSB following only a departmental hearing on her employer's charges. We conclude that preclusion should not apply in this setting.

Plaintiff short-circuited the applicable civil service administrative process. The process for major disciplinary actions within the civil service system is set forth in Title 4A, Chapter 2, Subchapter 2 of the New Jersey Administrative Code. Because plaintiff was to be terminated, we are concerned here with "major discipline," defined as including removal, disciplinary demotion, and suspensions or fines of a certain length or frequency. *N.J.A.C.* 4A:2–2.2(a). To impose major discipline, an employer must follow detailed notice procedures.

Specifically, prior to the imposition of major discipline, an employee must be served with a form Preliminary Notice of Disciplinary Action that sets forth the charges and a succinct statement of the underlying facts. *N.J.A.C.* 4A:2–2.5(a). The employee has five days to request a departmental hearing. *N.J.A.C.* 4A:2–2.5(c). If the employee fails to request a hearing, the right is waived and the employer may issue a Final Notice of Disciplinary Action and impose the discipline. *N.J.A.C.* 4A:2–2.5(c). The MSB rules do not contain many specifics about the nature of the hearing other than to permit the hearing to be conducted either by the appointing authority or its designated representative, *N.J.A.C.* 4A:2–2.6(a), and to set forth some rudimentary process requirements. The employee may be represented either by an attorney or a non-lawyer union representative. *N.J.A.C.* 4A:2–2.6(b). The parties have the opportunity to present evidence and examine witnesses, *N.J.A.C.* 4A:2–2.6(c), and if the employee testifies, he or she must submit to cross-examination. *N.J.A.C.* 4A:2–2.6(c). Within twenty days of the hearing's conclusion, the appointing authority must issue a decision and furnish the employee with a Final Notice of Disciplinary Action. *N.J.A.C.* 4A:2–2.6(d). Plainly, the hearing afforded at this level is designed to give the employee a fair and efficient opportunity to change the employer's mind about the appropriateness of the disciplinary action. It may serve that purpose well, but it does not afford other important procedural protections that are available on appeal to the MSB.

Independent review of the employer's position about the appropriateness of discipline and the severity of the discipline to be imposed comes from the MSB. The MSB is the agency charged with responsibility for creating a disciplinary system of fair and consistent application to protect civil service employees at the State and local level. *See N.J.S.A.* 11A:2–6. Thus, an employee may appeal his or her Final Notice of Disciplinary Action to the MSB, *N.J.A.C.* 4A:2–2.8(a), and may request a hearing. *N.J.A.C.* 4A:2–2.9(a). The MSB may hear the appeal itself or refer the appeal to the OAL for a hearing before an administrative law judge. *N.J.A.C.* 4A:2–2.9(b). Before the OAL, the Uniform Rules on Administrative Hearing Procedures apply. *See N.J.A.C.* 1:1–1.1 to –21.6. After hearing the matter and rendering an initial decision, the MSB may adopt, reject, or modify the ALJ's recommended report and decision, *N.J.A.C.* 4A:2–2.9(c), which permits the MSB to reverse or modify the disciplinary action of the appointing authority. *N.J.A.C.* 4A:2–2.9(d).

For a preclusive bar to be raised to judicial relitigation of a LAD claim, this Court has commented that there must have been an agency determination on the merits. *See Hernandez, supra.* In light of our prior decisions recognizing agency overlap in discretionary authority, we would be loath to suggest that only a DCR final adjudication would justify issue preclusion on a LAD claim and, indeed, courts have not applied our case law and *N.J.S.A.* 10:5–13 so narrowly. *See Ensslin, supra.* However, in this matter there was no adjudication by an agency with jurisdiction concurrent with the DCR because, in lieu of pursuing the administrative forum available to her before the MSB, plaintiff chose to file a LAD claim in Superior Court. That was her right. Her decision to forego an administrative remedy at that stage and to seek instead a judicial forum for her LAD claim was hers to make.

In sum, issue preclusion was determined appropriately by the Appellate Division not to apply in this setting, and for the correct reason. Preclusion is not warranted in these circumstances be-

cause of the stage at which plaintiff shifted gears from the administrative channels of review available to her, to the judicial forum that she preferred.

## IV.

The judgment of the Appellate Division is affirmed.

*For Affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.