**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2967-18T2

J.M.,

     Petitioner-Appellant,

v.

HORIZON NJ HEALTH,

     Respondent-Respondent.

_____

        Argued telephonically May 27, 2020 –
        Decided July 1, 2020

        Before Judges Yannotti and Firko.

        On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

        Joshua M. Spielberg argued the cause for appellant (Legal Services of New Jersey, attorneys; Joshua M. Spielberg and Kristine Marietti Byrnes, on the briefs).

        Jacqueline D'Alessandro, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Shereen R. Youssef, Deputy Attorney General, on the brief).

PER CURIAM

J.M. appeals from a final decision of the Director of the Division of Medical Assistance and Health Services (Division), dated January 24, 2019, which denied his application for additional physical therapy (PT) services under the State's Medicaid program. We reverse and remand for reconsideration.

I.

We briefly summarize the relevant facts and procedural history. Horizon NJ Health (Horizon) is the designated Managed Care Organization for New Jersey's Medicaid program. In 2006, J.M. sustained a back injury and later had spinal-fusion surgery. Thereafter, J.M. reported that he was suffering from chronic lower back pain. In 2014, the Medicaid program began to provide J.M. with PT services to treat that condition.

In October 2017, Functional Independent Therapy Rehabilitation (Fit Rehab) conducted a reexamination to assess J.M.'s need for additional PT services. He was thirty-five-years old at the time. J.M.'s physical therapist found J.M.'s ability to walk, range of motion, and knee strength were within normal limits, but his ankles showed some weakness. The therapist noted that J.M. had complained of pain and decreased ability to tolerate prolonged standing and walking. He scored a sixty-eight percent on the Modified Oswestry Low

2

Back Pain Index (ODI), which measures the ability of a person with lower back pain to function.

On October 18, 2017, Horizon authorized ten PT sessions for J.M. over a five-week period, between October 11, 2017, and December 11, 2017. J.M. attended eight PT sessions on various dates between October 11, 2017, and December 18, 2017. The therapist noted that at the eighth session, J.M. received an updated ODI score of sixty-two percent.

On December 28, 2017, Horizon denied J.M.'s request for additional PT services. Horizon found the additional PT services were no longer "medically necessary" because J.M.'s treatment notes did not show a change in his "level of function" or "strength." Horizon noted that J.M.'s motion was "at a level that [he] could do [his] daily tasks." J.M. sought internal review of Horizon's decision.

While the denial of his request for additional PT services was under internal review, J.M. attended additional PT sessions on January 3 and 10, 2018. On January 15, 2018, Fit Rehab performed another recertification review. J.M. scored a fifty-four percent ODI. The therapist recommended that Horizon authorize ten more PT sessions for J.M.

A-2967-18T2

On February 22, 2018, Dr. Arvind Baliga issued a report on Horizon's internal review and recommended that Horizon affirm the December 28, 2017 decision denying J.M.'s request for additional PT services. Dr. Baliga noted that from October 11, 2017, to December 18, 2017, J.M. had no significant change in his ODI score. He found there had been no improvement in J.M.'s functional outcome measures and no documented carryover of improvement between therapy sessions. According to Dr. Baliga, J.M. had reached a "therapeutic plateau."

By letter dated February 23, 2018, Horizon reaffirmed the December 28, 2017 decision denying additional PT services. In its letter, Horizon noted that J.M. had PT sessions since October 11, 2017, but he had not shown any improvement with his back pain or daily functioning. Horizon stated that J.M. had "reached a point where additional [PT] visits will not be helpful." It concluded that additional PT sessions were not "medically necessary."

J.M. filed an administrative appeal, and the Division referred the matter to the Office of Administrative Law (OAL) for a hearing before an Administrative Law Judge (ALJ). At the hearing, Roselle Perrucci, Horizon's Manager for Prior Authorization for PT, Occupational Therapy (OT), and other services, testified in support of Horizon's decision. J.M. and his mother testified

4

in support of the appeal. J.M.'s treatment records also were submitted to the ALJ.

On October 26, 2018, the ALJ issued an initial decision. The ALJ first rejected J.M.'s contention that Horizon was barred by res judicata and collateral estoppel from denying his request for additional PT services. The ALJ noted that in 2016, Horizon had denied J.M.'s request for PT services on the ground that they were not medically necessary.

J.M. filed an administrative appeal from that determination and Horizon's decision was reversed. J.M. v. Horizon, OAL Dkt. No. 09596-16 (Dec. 23, 2016). The ALJ found, however, that the facts and circumstances in the 2015-2016 timeframe were "entirely different" from this matter. The ALJ concluded res judicata and collateral estoppel do not apply.

The ALJ further found that Horizon's decision was premature because Horizon made that decision before J.M. completed all ten of the PT sessions it had authorized in October 2017. The ALJ also found that Horizon did not fully consider the evidence of J.M.'s improvement or response to treatment and instead appeared to focus almost exclusively on changes to J.M.'s ODI score between October 11, 2017, and December 18, 2017.

The ALJ noted that both Ms. Perrucci and Dr. Baliga found that the recorded six-percent difference in J.M.'s ODI scores did not meet the standard for a Minimally Clinical Important Difference (MCID), which was ten percent. The ALJ stated, however, that the ten-percent standard was not set forth in the agency's regulations or in Horizon's policy.

The ALJ wrote that Horizon had been asked to provide a source for the ten-percent MCID standard. The ALJ pointed out that Horizon's attorney had provided an explanation from its attorney, indicating that it based the standard on a database available on the internet. The ALJ found this was not competent evidence because it was not in the form of an affidavit or certification from Ms. Perrucci, Dr. Baliga, or other qualified professional.

The ALJ also pointed out that Horizon did not consider the additional changes to J.M.'s ODI score following PT sessions nine and ten in January 2018. The ALJ stated that during his internal review, Dr. Baliga did not have access to the results of the two PT sessions in January 2018. Ms. Perrucci had testified she did not believe a sufficient decrease in the ODI score was possible after the two additional PT sessions.

The ALJ found that, according to Horizon, the MCID is only one factor that is considered in determining if additional PT services are medically

necessary. The ALJ noted that in the December 2017 recertification, J.M.'s therapist stated that J.M. had made "strength gains" which assisted him in performing certain tasks around the home. The ALJ also noted that there had been changes to the type and intensity of the exercises J.M. had been performing.

The ALJ stated, "Horizon appeared to ignore or minimize these changes and instead focused solely on the MCID." The ALJ therefore concluded that Horizon's erred by denying J.M.'s request for additional PT services. The Division filed exceptions to the ALJ's decision, and Horizon responded to the exceptions.

The Director reversed the ALJ's initial decision. The Director found the record showed additional PT services for J.M. are not medically necessary. The Director noted that both Ms. Perrucci and Dr. Baliga had explained that in order to establish a MCID in functional outcome, there should be a ten-percent difference in the ODI.

The Director noted that this standard for determining the MCID is publicly available on the internet. The Director stated that the change in J.M.'s ODI after eight of the ten PT sessions approved in October 2017 was six percent, which did not meet the ten-percent threshold for a MCID.

A-2967-18T2

The Director also stated that it was "more than reasonable" for Ms. Perrucci to discount the further reduction in ODI score that J.M. achieved after the two additional PT sessions in January 2018. The Director noted that J.M. had only achieved an additional eight-percent reduction in his ODI score. The Director found this was insufficient to show a required MCID.

The Director further found the records from J.M.'s therapy sessions showed that as of December 18, 2017, he had made minimal progress. There was no carryover or improvement in his functional capability. The Director decided that the record supported Ms. Perrucci's conclusion that a home-exercise plan or one performed at a gym would be more appropriate for J.M. than additional PT services.

## II.

On appeal, J.M. argues that the doctrines of res judicata and collateral estoppel precluded Horizon from relitigating certain findings of facts and conclusions reached in the 2016 administrative appeal regarding Horizon's denial of his request for PT services. We disagree.

Collateral estoppel, res judicata, and similar doctrines serve important goals, including "finality and repose; prevention of needless litigation, avoidance of duplication; reduction of unnecessary burdens of time; and

8

expenses; elimination of conflicts; confusion and uncertainty; and basic fairness[.]" First Union Nat'l Bank v. Salem Marina, Inc., 190 N.J. 342, 352 (2007) (quoting Hackensack v. Winner, 82 N.J. 1, 32-33 (1980)). "Adjudicative determinations in administrative tribunals are entitled to preclusive effect if rendered in proceedings meriting that deference." Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 522 (2006) (quoting Zoneirach v. Overlook Hosp., 212 N.J. Super. 83, 93-94 (App. Div. 1986)).

For collateral estoppel or issue preclusion to apply, the party asserting the bar must show that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or was in privity with the party to the earlier proceeding.
>
> [Ibid. (quoting Hennessey v. Winslow Twp., 183 N.J. 593, 599 (2005)).]

In addition, res judicata or claim preclusion, applies when a party seeking to apply the doctrine establishes: (1) a valid judgment on the merits was entered on the claim in a prior action; (2) the parties in the later action are identical or in privity with those in the prior action; and (3) the claim in the later actions

arose out of the same transaction or occurrence as the claim in the earlier case. Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412 (1991) (citations omitted).

Here, the record shows that in the previous administrative proceeding, J.M. challenged Horizon's June 24, 2016 decision, which denied additional PT benefits on the ground that he had reached maximum improvement and such services were not medically necessary. In that case, the ALJ noted that J.M.'s therapist had stated that additional PT was medically necessary, and J.M. continued to improve.

The ALJ in the 2016 case found "Horizon's denial was inconsistent with the clear and unambiguous reports provided by J.M.'s therapist which indicate that he has not reached maximum medical improvement and that the additional PT treatment sought in this case for J.M. is medically necessary." The decision was based on testimony and evidence pertaining to J.M.'s treatment in 2014, 2015, and 2016.

However, as the ALJ in this case pointed out, the 2016 appeal pertained to Horizon's denial of PT services on the ground that J.M. had, at that time, reached maximum improvement and the additional PT services were not

medically necessary. Although the issues, parties, and relief sought were similar in 2018, the underlying facts are substantially different.

We therefore conclude the Director correctly determined that the doctrines of res judicata and collateral estoppel do not apply to this matter. As the Director aptly observed, a prior decision on an individual's eligibility for Medicaid services does not preclude a change to that decision "based on future circumstances."

III.

J.M. also argues the Director erred by denying his request for additional PT services because he did not record a ten-percent change in his ODI scores after eight of the ten sessions approved in October 2017. He contends Horizon failed to present competent evidence to support its application of the ten-percent threshold to show a MCID. He further argues that Horizon failed to consider the progress he made in the previously approved PT sessions.

We note initially the scope of our review in an appeal from a final decision of a state administrative agency is limited. Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). We will not reverse the agency's decision unless it is arbitrary, capricious, or unreasonable, or lacks fair

11

support in the record.  Id. at 9-10; see also In re Herrmann, 192 N.J. 19, 27-28 (2007).  In reviewing an administrative decision, we consider

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Circus Liquors, 199 N.J. at 10 (citing Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

In addressing these factors, we must defer to the agency's "expertise and superior knowledge of a particular field."  Ibid. (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).  Furthermore, deference to an agency's decision "is particularly appropriate" when the matter involves the interpretation and application of the agency's own regulations.  R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting I.L. v. N.J. Dep't of Human Servs., Div. of Medical Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)).

It is undisputed that Medicaid recipients are only entitled to services and supplies that are "medically necessary," a term defined in N.J.A.C. 10:74-1.4 to mean services that are

necessary to prevent, diagnose, correct, prevent the worsening of, alleviate, ameliorate, or cure a physical or mental illness or condition, to maintain health, to prevent the onset of an illness, condition, or disability; to prevent or treat a condition that endangers life or causes suffering or pain or results in illness or infirmity; to prevent the deterioration of a condition; to prevent the development or maintenance of maximal functioning capacity in performing daily activities, taking into account both the function capacity of the individual and those functional capacities that are appropriate to individuals of the same age; to prevent or treat a condition that threatens to cause or aggravate a handicap or cause physical deformity or malfunction, and there is no other equally effective, more conservative or substantially less costly course of treatment available or suitable for the enrollee.

In her decision, the Director noted that, in denying J.M.'s request for additional PT services, Horizon determined that J.M. did not show sufficient improvement as a result of his previously-approved PT services, as indicated in his ODI scores. Horizon based that decision on its written policy.

Horizon's policy states, in pertinent part, that long-term PT and OT services are not considered medically necessary under certain circumstances, including

1. [t]herapeutic intervention/services show minimal progression throughout the episode of care as evidenced by a lack of changes in type, frequency or intensity of interventions provided resulting in a plateau in overall therapeutic benefit

13

. . . .

4. [t]herapy is part of a program of maintenance where the member is neither improving nor deteriorating and can be provided by a caregiver without a therapist such that therapeutic exercises currently performed in the clinic [may be] carried out by the member or with the assistance of a caregiver in the form of a home exercise program

5. [t]he member has reached a therapeutic plateau, defined as the point at which the member:

a) [h]as returned to baseline status, OR

b) [i]s no longer demonstrating improvement as evidenced by minimally clinical important differences (MCID) in Functional Outcome Measure scores, OR

c) [s]hows no carryover of clinical improvement between therapy sessions specifically related to objective clinical findings including, but not limited to, range of motion, strength or subjective functional capabilities.

d) [t]reatment is intended to solely regulate pain but no carry over or long term reduction in pain has been documented.

. . . .

As the ALJ noted, however, Horizon's policy does not expressly state that it will use the change in a member's ODI score in determining whether the recipient has reached a treatment plateau or is "demonstrating improvement" as shown by a MCID. The ALJ had asked Horizon to provide the basis for the

14

A-2967-18T2

position that a ten-percent change in the ODI scores is necessary to establish a MCID in the recipient's functional outcome measures.

Horizon's counsel responded in a letter dated August 31, 2018. In that letter, Horizon's counsel explained that under its written policy, a MCID in functional outcome measures is one factor that Horizon uses to determine if PT is no longer medically necessary.

According to counsel, Horizon uses a "world-renowned database for clinical benchmarks and outcomes for rehabilitation" when it determines whether a recipient has shown a MCID in functional outcome measures. The database is available on the internet through an entity called RehabMeasures.

Horizon's counsel noted that in his recertifications, J.M.'s therapist had used the ODI as the measure of J.M.'s functional outcome measure. Counsel said the ODI is used to assess symptoms and the severity of an individual's low back pain. He stated that the RehabMeasures database sets the clinical range that is considered a MCID.

Counsel noted that in the period from October 11, 2017 through December 18, 2017, J.M.'s ODI score went from sixty-eight percent to sixty-two percent. He stated that J.M.'s six-percent decrease in functional outcome measure was

insufficient.  It showed J.M. was no longer demonstrating improvement from PT services.

In her final decision, the Director relied upon the RehabMeasures internet database as support for Horizon's use of the ten-percent threshold in determining whether J.M. had achieved a MCID in functional outcome measures.  However, as the ALJ stated, Horizon's explanation for its use of the ten-percent threshold was provided by Horizon's counsel.  It was not contained in an affidavit or certification from Dr. Baliga, Ms. Perrucci, or another qualified professional.

The ALJ thus found that counsel's explanation was not competent evidence and could not be considered.  We agree.  Therefore, the matter must be remanded to the Division so that Horizon can provide competent evidence, in the form of an affidavit or certification from a qualified person, setting forth the source and basis for use of the ten-percent standard in determining whether J.M. had reached a treatment plateau or was no longer demonstrating improvement, as evidenced by the MCID in functional outcome measures.

In this regard, we note that in its August 31, 2018 letter, Horizon's counsel stated that the RehabMeasures database produces a clinical range that is considered the MCID, with scores that typically range from two to fifteen.  The ALJ noted in her decision that Horizon's statement is "somewhat confusing and

appears to contradict [its] claim that a [ten percent] difference is required to establish MCID." As the ALJ noted, it is not entirely clear whether the RehabMeasure database supports the use of a ten-percent threshold for the MCID.

Moreover, in its August 31, 2018 letter, Horizon's counsel also stated that the MCID in functional outcomes is "one factor" that shows PT "is no longer medically necessary." However, as the ALJ pointed out in her decision, Horizon's decision to deny J.M.'s request for additional PT services apparently was based solely on J.M.'s failure to show a ten-percent change in his ODI score.

On remand, the Director should clarify the basis for Horizon's decision. If the ten-percent standard applies, the Director should determine if that was the sole reason for the denial of J.M.'s request for additional services, or whether there are other reasons, such as the ability to engage in a home-exercise program, that would justify a finding that such services are not medically necessary.

The ALJ also found that Horizon prematurely decided additional P.T. services are not medically necessary. As we have explained, on October 18, 2017, Horizon approved ten additional PT sessions for J.M. The record shows that J.M. attended eight PT sessions between October 11, 2017, and December 18, 2017.

17

On December 28, 2017, Horizon denied J.M.'s request for ten additional sessions. It based its decision, in large part, on the change in J.M.'s ODI scores between October 11, 2017, and December 18, 2017. As noted, in that timeframe, J.M.'s ODI went from sixty-eight percent to sixty-two percent. However, the record shows that after two additional sessions in January 2018, J.M.'s ODI score dropped to fifty-four percent.

In her final decision, the Director found that it was reasonable for Ms. Perrucci to discount J.M.'s reported fifty-four percent ODI score. The Director noted that the change in J.M.'s ODI score between December 18, 2017, and the date of the last PT session on January 18, 2018 was only eight percent.

On appeal, J.M. argues that in determining whether he was making sufficient improvement in functional outcome to warrant additional PT services, the Director should have considered the change in his ODI scores after he completed all ten of the PT sessions approved in October 2017. He notes that after the tenth session, his ODI score was fifty-four percent, which would satisfy the ten-percent threshold for the MCID, should that standard apply.

We agree with the ALJ that Horizon's decision on J.M.'s request for additional PT services was premature. It was unreasonable for Horizon to determine if J.M. was making sufficient improvement in his functional outcomes

A-2967-18T2

before he completed all ten of the sessions that were approved in October 2017. On remand, the Director should reconsider and base her decision on the change in J.M.'s ODI scores in the period from October 11, 2017, to January 15, 2018, the date J.M. attended the last of the ten approved PT sessions.

In her decision, the ALJ further found Horizon apparently failed to consider certain other evidence in the record, which showed that J.M. had made some improvement in PT. In her final decision, the Director stated that the evidence showed that J.M.'s progress was only minimal. It appears, however, that the Director based this finding on the results shown after J.M. participated in eight PT sessions, not the ten sessions approved in October 2017.

On appeal, J.M. argues that the records of all ten PT sessions show positive changes in the type and intensity of the exercises he performed. He asserts that over the course of ten PT sessions, his strength increased in seventeen out of eighteen areas tested. On remand, the Director should reconsider her decision in light of J.M.'s alleged improvement after all ten of the PT sessions approved in October 2017.

The Director may reconsider her decision based on the record presented at the OAL, with such additional competent evidence that the parties may

submit.  In her discretion, the Director may again refer the matter to the OAL for further proceedings and an initial decision by an ALJ.

Reversed and remanded to the Director for reconsideration of her decision in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2967-18T2