898 A.2d 1018

FRANCES MANSOLDO AND RONALD G. MANSOLDO,
PLAINTIFFS–APPELLANTS, v. STATE OF NEW
JERSEY, DEFENDANT–RESPONDENT.

Argued March 20, 2006—Decided June 5, 2006.

*Raphael G. Jacobs* argued the cause for appellants (*Jacobs and Bell*, attorneys).

*Lewin J. Weyl*, Deputy Attorney General, argued the cause for respondent (*Zulima V. Farber*, Attorney General of New Jersey, attorney; *Patrick DeAlmeida*, Assistant Attorney General, of counsel; *Mr. Weyl and Jason T. Stypinski*, Deputy Attorney General, on the briefs).

*Carter H. Strickland, Jr.*, Staff Attorney, Rutgers Environmental Law Clinic, submitted a brief on behalf of amicus curiae, Association of State Floodplain Managers, Inc. (*Mr. Strickland*, attorney; *John D. Echeverria*, a member of the District of Columbia Bar, of counsel).

Justice ZAZZALI delivered the opinion of the Court.

When the state regulates lands to protect the environment and provide for the general welfare of its citizens there are inevitably consequences that affect the rights of property owners. In this matter, the New Jersey Department of Environmental Protection (DEP) issued a regulation that severely restricts construction in the Hackensack River floodway for the laudatory goal of limiting flood damage and loss of life along the river. A consequence of that regulation, however, is that it prohibits plaintiff Ronald Mansoldo from constructing two single-family homes on his property that otherwise would be permitted by the zoning code. Instead, Mansoldo, whose family owned the property for a number of years before the issuance of the regulation, may use the property only for a parkland, open space, or a parking lot.

The issue therefore arises whether the DEP regulation effects a taking of Mansoldo's property and, if so, the extent to which he should be compensated. The lower courts both held that a taking occurred. However, the courts limited Mansoldo's compensation to the value of the above permitted uses, uses considered to be virtually worthless, and denied relief based on the value of the property as building lots. Because we conclude that the lower courts did not follow applicable standards of law and erroneously

relied on a factual record developed in a related administrative hearing, we reverse and remand to the trial court for reconsideration of the matter.

## I.

The subject property is a vacant tract of land designated as Block 906, Lots 16–19 on the New Milford tax map. The property is adjacent to the Hackensack River and, with the exception of a small triangular portion of its southerly part, is within the Hackensack River floodway. *N.J.A.C.* 7:13–1.2 defines "floodway" as "the channel and portions of the flood plain adjoining the channel which are reasonably required to carry and discharge the regulatory flood." In 1959, the Boswell Construction Company acquired the property, which the company retained until 1975 when it conveyed the property to Frances Mansoldo, who was a stockholder and officer of the company. Seven years later, in 1982, the DEP adopted a regulation that severely restricts construction in the Hackensack River floodway. *See N.J.A.C.* 7:13–7.1. In 1993, plaintiff Ronald Mansoldo, the son of Frances Mansoldo, sought to construct two single-family homes on the property, which is a permitted use under the New Milford zoning regulations. However, because the property is in an area that is subject to "fluvial flood[ing]," *N.J.A.C.* 7:13–1.2, and the construction would require the placement of fill into the floodway, Mansoldo was obligated to apply for a Stream Encroachment Permit with the DEP under the Flood Hazard Area Control Act Rules, *N.J.A.C.* 7:13–1.1 to 7.1. In 1994, the DEP denied Mansoldo's application on the basis that the erection of "new structures" or the "addition of any fill" into a floodway is prohibited under *N.J.A.C.* 7:13–2.2.

Mansoldo then petitioned the DEP for a hardship waiver pursuant to *N.J.A.C.* 7:13–4.8. The DEP denied the waiver, finding that the proposed "dwellings and fill [would] block virtually all flood flows across more than half of the floodway" and create a situation that would pose a "threat to the public health, safety and general welfare." The DEP also found that Mansoldo "ha[d] not ade-

quately pursued alternative uses for the property" such as selling it "to adjacent property owners for use as a parking lot, a park or open space." Mansoldo appealed that decision, and the DEP transmitted the matter to the Office of Administrative Law.

The parties then submitted a stipulation of facts and an Administrative Law Judge (ALJ) heard the matter. In considering whether a waiver should have been granted, the ALJ first found it

undisputed that, through brokers and otherwise, petitioner has made unsuccessful attempts to sell the property. The adjacent owners, one of which is the Borough of New Milford, *have no need to purchase the property for parking since there is no need for that use. There is no need for them to purchase the property for open space since it is already open space. The Borough does not want to buy the land for use as a park.* These last three uses would be the *only* ones permitted under the regulations.

[Emphasis added.]

However, the ALJ also found that because the regulation affects many other similarly-situated owners of land in the floodway, Mansoldo could not demonstrate that this was an "extraordinary or exceptional situation" under *N.J.A.C.* 7:13–4.8(d)(1). Further, the ALJ found that Mansoldo had failed to demonstrate that the application did not pose a threat to the environment under *N.J.A.C.* 7:13–4.8(d)(2).

The ALJ did find that Mansoldo had not created the hardship because the property had been purchased more than forty years ago, and that he had done nothing to cause the conditions for which the hardship waiver was sought. According to the ALJ, the "economic uses of the property were simply regulated out of existence" and the proposed alternative uses did "nothing to alleviate [Mansoldo's] problem." However, because Mansoldo failed to prove that this was an exceptional circumstance and that the application would not pose a threat to the environment, the ALJ granted the DEP's motion for summary decision and dismissed Mansoldo's appeal. The Commissioner of the DEP adopted the ALJ's decision without modification.

Mansoldo did not appeal that decision to the Appellate Division under *Rule* 2:2–3(a)(2) but instead filed a complaint in the Law

Division, arguing that the floodway regulations had resulted in an inverse condemnation of his property. Mansoldo moved for summary judgment and the State cross-moved for summary judgment. Citing *Lucas v. South Carolina Coastal Council*, 505 *U.S.* 1003, 112 *S.Ct.* 2886, 120 *L.Ed.2d* 798 (1992), the trial court stated that the primary question was whether the DEP regulation denied Mansoldo all economically viable use of his land. If so, then the DEP regulation effected a taking. In determining that issue, the trial court found that the doctrine of collateral estoppel required it to accept the ALJ's findings of facts and, based on those findings, it was bound to "conclude that there is no economically viable use of the land through no fault of the Plaintiff." Notwithstanding that conclusion, the court held that the State was required to compensate Mansoldo only for the value of the property's permitted uses as a parkland, open space, or a parking lot. The trial court reasoned that

the prohibition of [a] use of ... land which poses a public danger is not a taking [because] [p]roperty owners do not have the right to use property in a manner that risks injury and death.

However, in [this] case ... the uses for the land, parkland, open space and parking do not affect or do not cause danger to others, and ... there is no viability to those uses.

. . . .

[Therefore, the State has] to pay ... for those uses for which there is no economic viability, and which do not pose a danger to the health and safety of the public.

Because of alleged inconsistencies in the trial court opinion, including that the trial court had held that Mansoldo should be compensated for uses the trial court already had found to be valueless, both parties moved for reconsideration. Relying on *Lucas*, Mansoldo argued that if the court determined that a taking had occurred, then full compensation must be given. The State maintained that if the property does have value, then a taking did not occur. The State also argued that the trial court improperly accepted the ALJ's factual determinations because the ALJ decision was limited to the issue of the hardship waiver and did not

discuss whether there was a taking. The trial court heard oral argument and denied both motions for reconsideration.

Mansoldo appealed to the Appellate Division, arguing that the trial court had improperly limited his compensation to the value of the land as a parkland, open space, or a parking lot. The State abandoned its prior position and conceded that a taking had occurred. However, the State disputed Mansoldo's contention that compensation should be based on the value of the property with two single-family homes and asked the panel to affirm the trial court's determination that compensation be limited to the value of the land's permitted uses.

In its decision, the Appellate Division first noted that the floodway regulations were a valid use of the State's police power because they were "designed to prohibit uses that would cause injury to the community." However, relying on *Bernardsville Quarry, Inc. v. Borough of Bernardsville*, 129 *N.J.* 221, 240, 608 *A.*2d 1377 (1992), the panel found that it still must consider the economic impact of the regulation and the extent to which the regulation has interfered with "distinct investment backed expectations." In that respect, the panel reasoned that if the regulation deprived property owners of "all or substantially all of the economic use of [their] property," it would constitute a taking "regardless of the government's purpose for doing so."

Applying those principles, the panel concluded that

> there is nothing in the DEP's original decision to designate the floodway that constituted a taking. Instead, ... the taking occurred when the hardship waiver was denied ... because the practical effect of that decision was that even the permitted uses for the property were not viable.

Accordingly, the panel determined that the measure of value was not "the prohibited uses as building lots, but rather the value for the permitted uses as parkland, open space or a parking lot."

We granted Mansoldo's petition for certification. 185 *N.J.* 297, 884 *A.*2d 1267 (2005). We also permitted the Association of State Floodplain Managers, Inc. to submit a brief as amicus curiae.

## II.

We conclude that the lower courts incorrectly applied the governing case law to this appeal and, therefore, that the matter must be remanded to the trial court for further proceedings.

### A.

Under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, paragraph 20 of the New Jersey Constitution, property owners must be paid just compensation for governmental takings. *Bernardsville Quarry, supra,* 129 *N.J.* at 231, 608 *A.*2d 1377. This Court has stated that protection from governmental takings under the New Jersey Constitution is coextensive with protection under the Federal Constitution. *Pheasant Bridge Corp. v. Twp. of Warren,* 169 *N.J.* 282, 296, 777 *A.*2d 334 (2001), *cert. denied,* 535 *U.S.* 1077, 122 *S.Ct.* 1959, 152 *L.Ed.*2d 1020 (2002). In the prototypical takings situation, the determination whether a taking has occurred is clear because the government physically appropriates the property from the current owner in favor of itself. However, the question whether a taking has occurred becomes more complicated when it involves government regulation of a property. As Justice Holmes stated, "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 *U.S.* 393, 415, 43 *S.Ct.* 158, 160, 67 *L.Ed.* 322, 326 (1922).

One example of a governmental regulation that has been held to go "too far" is "where [the] regulation denies *all* economically beneficial or productive use of [the] land." *Lucas, supra,* 505 *U.S.* at 1015, 112 *S.Ct.* at 2893, 120 *L.Ed.*2d at 813 (emphasis added). In *Lucas,* the Court stated that in that situation the government must pay just compensation unless "background principles of the State's law of property and nuisance" would restrict the owner's intended use of the property. *Id.* at 1029, 112 *S.Ct.* at 2900, 120 *L.Ed.*2d at 821.

If the regulation does not deny all economically beneficial use under *Lucas*, then the determination whether the regulation otherwise constitutes a compensable taking is governed by the standards set forth in *Penn Central Transportation Co. v. New York City*, 438 *U.S.* 104, 98 *S.Ct.* 2646, 57 *L.Ed.*2d 631 (1978); *see Lingle v. Chevron U.S.A. Inc.*, 544 *U.S.* 528, 538–40, 125 *S.Ct.* 2074, 2082, 161 *L.Ed.*2d 876, 888 (2005) ("The *Penn Central* factors ... have served as the principal guidelines for resolving regulatory takings claims that do not fall within the physical takings or *Lucas* rules."). *Penn Central* provides "[a]n ad hoc factual inquiry ... for regulatory action that diminishes but does not destroy the value of property by restricting its use." *Bronco Wine Co. v. Jolly*, 129 *Cal.App.*4th 988, 29 *Cal.Rptr.*3d 462, 497 (2005). In *Penn Central, supra*, the Court explained that there are "several factors" for evaluating regulatory takings claims, the most important of which are the "economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations [and] the character of the governmental action." 438 *U.S.* at 124, 98 *S.Ct.* at 2659, 57 *L.Ed.*2d at 648.

## B.

In this matter, the lower courts failed to properly apply the above case law. Those courts focused on the State's interest in enacting the floodway regulations and, using similar rationales, found that because the regulation prevented a public danger to the community, Mansoldo's compensation should be limited only to those uses that did not pose such a danger. However, as the Court explained in *Lingle, supra*, considerations of "legitimate state interest[s]" have no bearing on whether the DEP regulation effected a taking or what compensation is due. 544 *U.S.* at 538–40, 125 *S.Ct.* at 2082, 161 *L.Ed.*2d at 888. Rather, the cornerstone inquiry in this circumstance is whether the DEP regulation denies "all economically beneficial or productive use of [the] land." *Lucas, supra*, 505 *U.S.* at 1015, 112 *S.Ct.* at 2893, 120 *L.Ed.*2d at 813.

If the DEP regulation does deny all economically beneficial or productive use of Mansoldo's property, then the State must provide just compensation unless background principles of this State's property and nuisance law prohibit Mansoldo's intended use. *Id.* at 1029, 112 *S.Ct.* at 2900, 120 *L.Ed.*2d at 821. On the other hand, if the DEP regulation does not deny all economically beneficial or productive use of the land, then, as described above, the *Penn Central* factors must be applied to resolve the issue. Because the trial court and Appellate Division did not follow that framework, the case must be remanded.

 Further, we note that the trial court held that it was collaterally estopped by the ALJ's findings in Mansoldo's hardship waiver adjudication from determining whether the DEP regulation denied all economically beneficial or productive use of his property. Collateral estoppel precludes a party from litigating an issue provided, among other conditions, that the issue "is *identical* to the issue decided in the prior proceeding; ... the issue was actually litigated in the prior proceeding; [and] the determination of the issue was essential to the prior judgment." *Hennessey v. Winslow Twp.,* 183 *N.J.* 593, 599, 875 *A.*2d 240 (2005) (emphasis added) (citations omitted). Although collateral estoppel applies to the final decisions of administrative agencies, *id.* at 604, 875 *A.*2d 240, the doctrine does not apply in this situation. The issue in the administrative hearing was whether the DEP had properly denied Mansoldo's application for a hardship waiver. In deciding that issue, it was not "essential," *ibid.,* for the ALJ to rule on whether there was a taking. Nor was a finding that a taking had occurred necessary to support the ALJ's judgment. *See, e.g., Warren v. Suffness,* 225 *N.J.Super.* 399, 408, 542 *A.*2d 931 (App.Div.) (stating that collateral estoppel applies not only to matters or facts that are directly in issue but also to those necessary to support judgment rendered in prior action), *certif. denied,* 113 *N.J.* 640, 552 *A.*2d 166 (1988). In that respect, the issues in the two matters are not identical because a hardship waiver is granted upon a finding of "exceptional and undue hardship," *N.J.A.C.* 7:13–4.8(d)1.

Although the regulation itself does not define hardship, we agree with the statement made in a related context that a claimed undue hardship "need not result in the inability to make *any* use of the property." *Davis Enters. v. Karpf*, 105 *N.J.* 476, 493, 523 *A.*2d 137 (1987) (Stein, J., concurring). Moreover, on remand the trial court also must address an entirely different question—whether background principles of property and nuisance law prohibit Mansoldo's intended use. As such, collateral estoppel cannot be properly applied in this matter.

■ Finally, in Mansoldo's answers to the State's interrogatories he stated that he no longer disputes the DEP and ALJ determinations "that a structure would pose a threat to other properties during a flood." The State argues that that answer is a concession by Mansoldo that his intended use of the property is a nuisance under *Lucas*. In oral argument, counsel for Mansoldo stated that he never admitted or stipulated that construction would create a nuisance. Rather, he just "gave up fighting the findings of the DEP and the administrative law judge" and decided to seek compensation by filing this suit. In light of those statements, we disagree with the State that Mansoldo's ambiguous statement is a concession that his construction would be a nuisance under *Lucas*. Further, and as noted, the DEP and ALJ proceedings related to Mansoldo's application for a hardship waiver, not to whether common law nuisance was proved. As a matter of common sense and fairness, we are reluctant to find that Mansoldo's statement made in reference to a different proceeding should bar him from bringing this suit. Therefore, Mansoldo's statement does not bar our resolution of this matter.

## III.

In sum, we reverse the Appellate Division and hold that this matter must be remanded to the trial court. On remand, the court first must determine whether the DEP regulation denies all economically beneficial use of the property and therefore effects a taking under *Lucas*. In doing so, the court should conduct its own

factual inquiry and not rely on the ALJ findings. If the court finds that the DEP regulation denied Mansoldo all economically beneficial use of his property, then the State is required to pay just compensation unless the court determines that background principles of property and nuisance law preclude Mansoldo's intended use of the property. Finally, if the court concludes that the DEP regulation does not deny Mansoldo all economically beneficial use of his land, then it must determine whether there was a compensable taking under the factors set forth in *Penn Central.* Accordingly, we remand this matter to the trial court for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.